Your Honor, I represent Mr. Becerra-Torres. You said it so much better than I did. Thank you, Your Honor. With the Court's permission, Your Honor, this case brings an issue that's fairly complex. Basically, the issue in this case is whether the Stop-Tag Rule in Section 240A, D-1 of the Act, operates to terminate the period of continuous residence required for a cancellation of removal under 240A. As of the date, the respondent committed the offense. In this case, Mr. Becerra essentially was detained at the border in Calexico, California, and he had with him .7 grams of marijuana. He was detained in exclusion and appeared in front of a judge, and he applied for cancellation of removal. During the dialogue between my client and the judge in this case, it was revealed that my client had essentially smoked marijuana during a period of time that he had not yet accumulated the seven years of continuous residence. There is an instance of about maybe two instances where he said, I smoked between 1999 once for my birthday and in 2000 for my girlfriend's birthday. So those are the facts. And essentially, before I get to the issue itself, the judge found that in this case he did not qualify for the First Offender Act simply because he had more than one predicate offense, admitted offense. Well, under the code, since 1990, we've had a code under 844A, small a, which basically makes it a civil offense to have possessed or, in this case, smoke and possess being the same thing. There was no mention of that at all by the judge. He simply said, well, he doesn't qualify under 844 as it refers to Title 18-36-7, which is the expungement statute, and he doesn't qualify for that because he's got three instances where he smoked marijuana. So that is the first thing I want to mention to the Court. That was not even mentioned by the IJ. As to the actual issue in this case, the one case that the government has brought to the Court, asking basically the Court to give a Chevron deference, is the case of Perez. This case is found in 22 INA Decision 693. In that case, the BIA went out of its way, despite the fact that there was clear congressional writing intent, went out of its way to find, essentially, that the stop time rule disqualified people from the time that they committed the act as opposed to the time that they were in exclusion. And that is very important because the code, essentially, for the section that's involved in this case, which would be 240 capital A, D1, states as follows. For purposes of this section, any period of continuous residence in the U.S. shall be deemed to end when the alien has committed an offense referred to in Section 212A2 that renders the alien inadmissible to the United States under Section 212A2 or removable from the United States under Section 237A2. The BIA went out of its way to find a tortuous explanation for this language, but yet it's so plain in its face. This particular section speaks of two different instances. The person coming into the United States in exclusion, meaning he's outside the United States, coming into the United States and doing something that renders him inadmissible at the time of this occurrence. As a matter of fact, if you read the statute, it says committed an offense for which he's inadmissible. That law was changed during IRERA, the deportation exclusion law, and it's now all removal because it then goes on to say under Section 237A4 as a removal. So the code itself, 248D1, actually distinguishes the person coming into the United States in exclusion from a regular removal which can be had later on under 237A2. Nevertheless, the court in Paris went even further and said, you know something? There's something about this word renders, and it really labored on that one word, and it's so easy and it's on its face. Render, in an exclusion situation, there are no convictions, and the reasons are simple. It would be very difficult to go out in other countries and find out what is a crime, what isn't a crime, was he convicted, not convicted, et cetera. So everybody coming in who violates the law in certain ways is deemed to have violated without a conviction, whereas under 237A2, you need a conviction to deport someone, actually to remove someone from the United States. And it gives this thing renders, this word renders, so many different meanings. And then it goes out and it actually takes the words from the congressional records, and the congressional record plainly states that in order to be removed from the United States, you need a conviction, and the exact words, in a joint explanatory statement of the committee for the Congress, section 240AD provides that the period of continuous residence ends when the alien is convicted of an offense, not before, not when he admits. So for us to accept your argument, we'd have to disagree with the board's interpretation of the statute, right? Definitely, definitely. I am aware of another circuit, I think it's the Second Circuit, that has bought into this argument. But I would suggest, Your Honor, that in this case- Did you cite that case in your briefs? I did not. I just found out yesterday, Your Honor, and I did not write it down. My apologies. I was informed that I believe the Second has cited this case. You found out about the case? You didn't find out what it was? You didn't write it down? You didn't give- By telephone, Your Honor, I- Let me finish. You didn't give opposing counsel citation, a chance to argue about it? You didn't bring a citation with you to court today, but you're going to tell us the Second Circuit went the same way on a- No, my apologies. I did not get a chance. I was- You should write it down. We have a- don't we have a vehicle for writing it down and giving it to the clerk? I did, and we did- And how is opposing counsel going to argue about it if you don't have the case, you don't give it to him? I mean, you said you had found out yesterday. You have 24 hours. You could have emailed. You could have telephoned opposing counsel. You could have gotten a copy of the session and- I was in El Centro, Your Honor, yesterday. I'm sorry. They don't have telephones in El Centro? Yes. I've been to El Centro, and they have telephones. Right. They even have cell service. They have the Internet in El Centro. They have running water. They have everything in El Centro. Believe me. Can you clarify one thing? Did the Second Circuit accept your argument or accept or validate Perez? Validated Perez, Your Honor. Yes. Okay. So it would have been contrary to your interest in any event. It doesn't help your case. That is correct, Your Honor. Right. So- I thought I heard you say the opposite. No. No, Your Honor. I said it sided with the Perez case, and the Perez case- Oh, it sided with the Perez case. I'm sorry. I misunderstood. I thought you were saying that they-I misunderstood. I thought you said they went the other way. No, Your Honor. I see. So this is a case that does not support your view. Correct. And that's what I'm trying to share to the Court and inform the Court- I see. I understand. I'm sorry. I thought you were relying on the case. Okay. Then I suppose it's up to the government to- Since it's not controlling authority, I suppose you have no obligation to bring it to the Court. I'm sorry. I didn't mean to interrupt. I'm sorry. I don't want to cut off Judge Waldo. My question was, and I think you sort of sidelined with talking about Perez. We would have to disagree with the Board, and what is the standard for that? Don't they get deference on interpretations of the statute? Not unless the interpretation of the statute is contrary to- Well, I understand. That's always true. But it's normal Chevron deference, right? Definitely. Certainly. Okay. I'm sorry. Judge Waldo. I just wanted to know, were you the counsel? Did you raise ineffective assistance of counsel? I did, Your Honor, as to only one level because we were not aware of the first level. My information is there was an attorney by the name of Attorney Amavista that represented the respondent in front of the IJA. And then later on, it was taken in appeal to the BIA by an attorney of Ray Estolano, I believe. Attorney Estolano did not mention anything about ineffective assistance of counsel on behalf of his client for Mr. Amavista's actions or lack of actions in court. He simply attempted to get the case in appeal, and he did appeal to the BIA. Well, I don't understand why he would have let his client testify to use marijuana on two times in Mexico when he was never arrested, charged, convicted. I agree, Your Honor. But where is it raised? I mean, did you- Well, I am caught in a difficult situation because that was not raised by Attorney Estolano, and he did make an appeal to the BIA, and that appeal was returned. As a matter of fact, he was given so much, so much time, 60 days for him to appeal to the 9th Circuit. I mean, it says here that your client is being removed for recreational use of marijuana two times as a teenager. Correct. Well, he was over the age of 18, Your Honor, 18 and 19. Well, he's not being removed for those things. What it does is it cuts off the residence period. Well, no, he's not being removed, but he would have had a remedy available under 240A, and that was cut off short because of the requirement for the 7 years continuous residence. Wasn't he counseled by his lawyer? Obviously not. Why did nobody raise this? Well, I did not raise Estolano. I am the attorney that took the case from Mr. Estolano. Yes, I understand. But nobody raised it before the BIA, and I can't raise it here for the first time, I don't believe. Do we know who his original lawyer was? Yes, Your Honor. According to the records, his original lawyer was a gentleman by the name of Amavisca. I don't recall his first name, but that's what the record shows. And Mr. Amavisca, during BIA, during the trial in which he presented evidence under 240A, nothing, he did not voice one concern about his client testifying. He did not invoke the 5th for his client. Nothing. And Mr. Estolano. Is Amavisca still practicing law? I hope not, Your Honor, because in this case. But there was no complaint raised to the bar if you were required to do, if you raised an effective counsel claim, right? Correct. Mr. Estolano, who took over the case and appealed to the BIA, did not do any action against Mr. Amavisca. And I cannot, I'm in the second tier above that, and all I could get, and I did, was file a time bar and a number bar request to reopen and the BIA kindly opened the case on their own. But I cannot go against Mr. Amavisca. I can raise the issue here, and that was my last request, for this Court to permit a remand so we can discuss that in front of the IJ. And perhaps from that, I can do an appeal. Okay. I am stuck with that. Thank you. You are over your time. Thank you. Thank you, Your Honor. We'll hear from the government. May it please the Court, Todd Hargrove on behalf of the Attorney General. The court should deny the petition for review because the petitioner is inadmissible and therefore ineligible for cancellation of removal due to the operation of the stop-time rule. He admitted committing the elements of an inadmissible offense about five years after he was admitted as an illegal permanent resident, which makes him ineligible for cancellation of removal. In addition, the court should conclude the board did not abuse its discretion in denying the motion to reopen because the petitioner failed to demonstrate prejudice causing the alleged ineffective assistance of counsel of Mr. Estolano. The board determined that he didn't change his address at an appropriate time with the board, and they reissued the decision remedying that issue. Moreover, for a variety of reasons, the petitioner failed to carry his burden to show that he was prejudiced because he did not show either a plausible claim for relief due to his inadmissibility. Regarding the matter of Perez's case, the board decision, which we maintain that is entitled to Chevron deference by the court, there the statute it issues states that any period of continuous residence or continued physical presence in the United States should be deemed to end when the alien has served a notice to appear, which is not relevant here, or when the alien has committed an offense referred to that renders the alien inadmissible. In the matter of Perez, the board determined that the word render, as counsel references to, does not impose a separate temporal requirement. It simply requires the alien to commit or commit the elements of the offense rendering him inadmissible. There's no time requirement put into the statute as interpreted by the board. Regarding the... I'm trying to visualize. I'm not sure I quite understand. What does that mean? What would be the time requirement? Well, petitioner's counsel in his brief has raised the issue that Mr. Becerra-Torres was not rendered inadmissible until he, after using the marijuana, he departed the United States at some time of his choosing, chose to apply to come back into the United States, I think eight years after he first started using the marijuana, and his use was then discovered. So he thinks that he wasn't rendered inadmissible until his controlled substance acts were discovered, and therefore he's outside the seven-year time. To when he admitted it as opposed to when he used it. Correct. That's the argument the petitioner's counsel makes. And really that produces an absurd result because that encourages the alien to hide his controlled substance use from the government. Do they not have Fifth Amendment rights? I'm sorry, I don't follow your question. Aren't aliens persons, and thus they have Fifth Amendment rights against self-incrimination? They do, but he wasn't convicted of anything here, Your Honor. He simply admitted committing the offenses. No, I realize that, but if it was indeed a controlled substance offense, by admitting to it, then he could be subject to himself to prosecution. So he would have a right not to have to admit it. And even in a civil proceeding, it's the same basis for the due process rights of aliens. We deem them to have Fifth Amendment rights. Yes, if he was being prosecuted for the offense, which he was not. Do you have the right against self-incrimination, whether you're being prosecuted at the time or not? I believe so, Your Honor, yes. Nevertheless, he still chose with counsel the entire time. He admitted the elements of the offense, which cut off his time. Did he admit the elements of the offense? Is it single use? Wasn't it .07 grams of marijuana, which is like one marijuana cigarette? It was .07. I don't know how much that equates to, Your Honor. My law clerk tells me. I will trust your law clerk on that point, Your Honor. I will note that he — Does it give you pause that you're kicking somebody out for smoking one marijuana cigarette, now that you know what it is? Well, I'm not entirely sure that that's all that Mr. Becerra-Torres enjoyed. He did testify before the immigration judge that he had used it two times a year since he was in high school, and that's at the record 124 and 136. He also said that he had used cocaine three days before he came in, back into the — when he came to the border, asking to be readmitted. That's at 131 and 141. Right, but what the BIA and the IJ are relying on is the two uses in Mexico. Correct. Well, they weren't in Mexico. He admitted using marijuana in the United States. Okay, two uses, though. He admitted using marijuana the same day that he was detained at the border, and that's at administrative record 141. He went to Mexico, I think, for approximately nine hours for a party, and when he came back to come back in the U.S., that's when he was detained at the border, and then he admitted that he'd used marijuana on a number of occasions and was put into proceedings. Did he admit where he used marijuana? I don't know if he admitted where. He admitted that he'd used it prior to being 18 years old, which the court did not count against him, and then on his 18th birthday, his girlfriend's 18th birthday, his 19th birthday, and then again, as he said, approximately two times a year since he was in high school, which he graduated from high school, I believe. But does he admit, do we know where? I do not believe he specifically says where. You know, lawyers use words like specifically. It's such a weasel word. Either the record says, reflects that we know where, or it doesn't. I do not know, Your Honor. Okay, it could have been in France. Potentially. It could have been in some country where marijuana smoking is legal, like I think Canada, parts of Canada. It could have been in a state. I mean, I'm just wondering what was proved up to show that these uses are in fact illegal at the time and place he actually used it. What's the evidence of that? Off the top of my head, Your Honor, I do not know the evidence about where he did it. Okay, I assume there's nothing in the record about the time or place he used it. And I assume, as I think is the case, but you can correct me if I'm wrong on this, when you go back and look at the record, I assume there's no evidence as to the location or the state of the law. I, for one thing, have no idea what Mexican law is or what Mexican law was at the time Petitioner was 17 or 18 or whatever age he was. For all I know, at the time and place where he used it in Mexico, it was legal. Or it was legal to smoke marijuana, you know, one cigarette or, you know, some small quantity. I don't know what the law is. I am not omniscient on this. I'm just wondering if there is nothing in the record to prove up the state of the law or the time, specific time and place, so we can pinpoint whether that's an illegality, how can we sustain this as based on substantial evidence in the record? I guess your moot court partners didn't prepare you for this question. No, Your Honor. You need to get better moot court partners. I will convey the case. Isn't the answer, the record simply does not sustain a finding that this was illegal at whatever time and place it happened? All he said is he did something which today is legal in Colorado. And I know there are countries in the world where it's legal. He didn't say where he was. Isn't it a misdemeanor or something in California right now? I mean, I don't know, but there was a point in California where I think, I don't know actually, but I think having one marijuana cigarette was not illegal. I don't know the answer to the California law question. In California, if you have a certificate from a doctor, I happen to know, were you in the Conant case with me? No. Okay. Anyway, I have a case about it. If the doctor gives you a certificate, not even a prescription that says for health reasons you're entitled to smoke marijuana and you carry it around, you can't be arrested. Now, it might be illegal under federal law still, and that's a very complicated question as to whether or not. But certainly I have no idea what the interaction of laws in Mexico is. And, you know, this petitioner, as best I can tell, spent chunks of time outside the United States. And to my knowledge, questions of law, of foreign law, are questions of fact that have to be proven by whoever carries the burden by bringing in evidence. You can't just guess it's illegal. You can't just sort of make it up. You can't say, gee, I think it ought to be illegal and therefore it's illegal. There's nothing in this record, is there? I believe that he did smoke the marijuana in the United States. I can't point to the exact part of the record at this time, Your Honor, but he talked about, again, doing it on his birthday when he was in high school here in the United States. He's been here since he was 11 years old. He's been at LPR since he was 11 years old, I believe. But he was in high school. He would have been a juvenile. Well, when he was 18 and still in high school, and then subsequently his girlfriend's birthday after that, and then his 19th birthday after that when he was still here in the United States. His sojourns to Mexico, he testified he went a couple of times a month to a house his parents owned. He usually went for a party. In fact, the day that he came back, he'd been in Mexico for nine hours. May I ask you, does this defendant have any criminal convictions? I don't believe so, Your Honor. So you're saying that he went to Mexico to smoke dope? I believe that he smoked the marijuana in the United States, went to Mexico for a party, and then returned to the U.S. The act, I believe, occurred in the United States. So the only party in this scenario that you've outlined is the one for his girlfriend's birthday. You mentioned that there were parties on 18th and 19th birthdays. Are those all in the United States except for the one in Mexico? I don't think there were necessarily parties for his birthday. He just commemorated the birthdate of his own birthday and his girlfriend by smoking marijuana. In the United States? Correct. He admitted that? I believe so, Your Honor, yes. Did he have a certificate? I'm sorry, Your Honor? Did he have a doctor's certificate? No, he did not, and he testified to that. I'm sorry? He did not have a prescription. He testified to that. Did he have a certificate? You don't need a prescription. No, he did not testify that he had a certificate as well. So this I.J. said that except for those two uses of marijuana that he admitted to, the I.J. indicated that the positive social humane factors would militate in favor of relief and he would grant the relief as a matter of discretion. Unfortunately, I cannot reach the issue of discretion because he is statutorily barred. What if we find that he's not statutorily barred? If he's not statutorily barred, I believe it would have to go back to the immigration judge to determine in his discretion whether he would grant cancellation to this individual. Right, but he's already said he would. I still believe it would need to go back to the immigration judge to actually enter that order, Your Honor. Like in the last case when they didn't enter the order and he was arguing it should have been remanded? Right. Okay, thank you. Thank you. If you have anything on the record, you can present it in the next 24 hours by 28 January. Thank you, Your Honor. Okay. Case not argued. We stand submitted.
judges: Kozinski, Wardlaw, Fisher